MEMORANDUM ON MOTIONS
 

 1.
 

 Motion by Receiver for Compensation
 

 JENNINGS, J.
 

 The question of the compensation of the receiver in this case has arisen at various times since the
 
 *146
 

 receiver
 
 was appointed. No detailed statement of facts is called for in this memorandum since they have been so fire-quently rehearsed in detail and in summary at various stages of this proceeding. Such a summary is contained in Judge Cornell’s memorandum on this same subject, document 971. As found by him, when the bank reluctantly assumed the responsibility of this receivership “tire Receiver Bank, undoubtedly actuated by a desire to successfully perform a task of important public implications, has through its officers and counsel made statements to the court to the effect that it expected no allowance for its services, over and above reimbursement for actual expenditures made by it in conducting the business until ‘it appeared that the administration of the receivership was successful and that the depositors were paid in full, and if it appeared hereafter that the depositors were paid in full the receiver would then request the court to make some allowance in the form of compensation for the grave responsibilities assumed by the receiver’. . . .”
 

 Although the matter was discussed at various times, the first formal application for an allowance was filed December 4th, 1934, document
 
 #952,
 
 for the reasons therein stated. This application was denied without prejudice in the memorandum previously referred to
 
 (#971).
 
 This memorandum concluded as follows: “Under such circumstances, in view of the attitude which the receiver bank has uniformly expressed to the court and by which the court has perhaps been influenced in making previous rulings, it is considered that an allowance of fees should await the event when it can be more definitely determined what the total dividends ultimately paid to depositors may be.
 

 “This is not to say that if in the end the depositors are not paid in full the receiver bank will not be entitled to compensation for its services. That question must be decided if and when it arises, in view of all the circumstances as they then exist. It is merely now decided, in the light of the considerations reviewed, that no allowance should be made at this time.”
 

 I have quoted rather fully from this memorandum because the very question before us now was then fully argued and considered at that time. The conclusions reached by Judge Cornell are therefore of great interest and importance to me in deciding the question.
 

 
 *147
 
 The application was renewed before Judge O’Sullivan on May 29, 193?. At that time it was apparent that the Bank Commissioner would take over this fall and Judge O’Sullivan felt that the decision on the application should be deferred until that time. (Document #1031.) That time has now arrived and the question must be decided by me.
 

 Any court would be justified in denying this application on the statements referred to above. On the other hand, there is nothing in these statements or in the memoranda of Judges Cornell and O’Sullivan which prevent the granting of the application, if it seems fair and just to do so. As I read these and other statements appearing from time to time in the file, I get the definite impression that, while decision of the question was certainly postponed to the end of the case, it was the intention of the principal officers of the bank to make some additional charge, the amount to be determined on a fair basis considering all the factors and interests involved at that time.
 

 The case for denying the application rests on the statements made with the possible additional consideration that the appointment may have been influenced by these statements. The latter argument loses most of its force when the reluct' anee of the bank to accept it is considered. Furthermore, most, if not all, of the statements were made after the appointment. The original vote of the directors, which has been shown to me, certainly contemplated some eventual compensation.
 

 The principal argument in favor of granting the application is the conduct of the receivership. It so happens that I have had considerable personal conduct with this receivership. I feel that it has been handled with energy, originality, industry and success. In view of the distressed condition of the country in general and of Waterbury in particular at the time of closing, it does not seem possible that the affairs of the bank could be as fully and well liquidated as their final report indicates.
 

 Other considerations are briefly referred to. The tone of the country at the time of closing was hysterical. No less than five Connecticut banks were closed in this same month. The duration of the task was certainly not anticipated nor was its magnitude appreciated. Because of its resignation as receiver there has been no opportunity to appraise the final
 
 *148
 
 outcome of the affair.
 

 On the whole, it seems to me that the application should be granted. Had it had the opportunity to complete its work, I should feel, as did Judge Cornell, that the dec'sion should await that event. Its work is now over, h wever, and is to be taken over by a different agency. It should receive some compensation.
 

 The question of amount is most difficult The receiver has requested $57,000. based on one per cent of the assets coming into its hands for administration. (See General Statutes Section 3937, since repealed.) Its officers feel very confident that if they were allowed to continue along present lines, they would be able to pay one hundred per'cent to depositors. If they had succeeded in doing this, the fee asked would not be unreasonable in view of the extent and character of the services rendered. The depositors strenuously object to any fee for the reasons set forth above. The outcome of the liquidation is uncertain. It is a clear case for compromise due to changed and unanticipated conditions over which the receiver had no control. I find that, under the circumstances, $25,000. is a reasonable fee and that amount is allowed. The amount is only one and one quarter per cent of the remaining assets and, while it will certainly not fully compensate the receiver, will materially assist in taking care of the overhead expense, not included in the amount paid for reimbursement.
 

 In addition to requesting a fee for services the receiver has requested the allowance of its ordinary account for reimbursement for sums paid to its officers and employees engaged on the work of the receivership. This motion is also granted.
 

 II.
 

 Motion by Attorneys for Compensation
 

 The attorneys for the receiver have also requested compensation for the completion of their services. Judge Reeves, whose place they took, received $35,000. and they suggest for reasons stated in their brief that they should receive an equal amount.
 

 I have always felt and believe that I have demonstrated it by my ruling on such motions during the last five years, that attorneys should receive fair compensation for the very difficult work involved in receiverships of this character. When
 
 *149
 
 so many of our Connecticut banks were folding up the whole proposition was new to Connecticut and very difficult legal questions were involved. The law with reference to this type of litigation, while not entirely settled, has however been greatly clarified by numerous Supreme Court decisions and the work now is of a much more routine character than it was at the outset five years ago. As stated before, I am quite familiar with this receivership and know the numerous and difficult questions which faced the receiver and its counsel during the first year or two. Since then, while the work has been difficult, the legal questions arising have been neither so numerous nor so intricate. It may be true as claimed by present counsel, that the large number of compromises completed in this estate have involved more detailed work then devolved on Judge Reeves but it certainly was of a more routine character, with the possible exception of the work involved in final closing. This is apparent from an examination of the detailed statement of services rendered by present counsel. I always felt that Judge Reeves was fairly, if not generously, compensated for the services he rendered and believe that payment to present counsel on the same basis would be fair.
 

 Judge Reeves’ fee works out almost exactly at $1250. per month. Present counsel have served since April 11th, 1934— a period of seventeen and one-third months. On the basis of $1250. per month, this would figure out approximately ,$21,650., less the $18,500. received by them to date. This leaves a balance of $3150., which is allowed in full payment.
 

 III.
 

 Approval of Orders Passed in Chambers
 

 During the summer a large number of orders were passed in chambers, most of them compromises of claims. They have all been certified to the court by the judge signing the order and are hereby approved.
 

 IV.
 

 Final Report
 

 The final report of the receiver has been submitted and examined by me. It appears to be in proper form and as I understand it is satisfactory to the Bank Commissioner. The report is approved.
 

 Due to the complications inherent with the situation, cer
 
 *150
 
 tain expenditures, such as the payments to counsel and the receiver and to the agent handling the real estate, were not made prior to the compilation. These expenses, together with any compromises approved subsequent to this compilation can and should be taken care of in the judgment.
 

 V.
 

 Discharge
 

 Upon making return of the payments authorized by this memorandum, together with any others authorized since the compilation of the final report and of the turning over of the assets and records to the Bank Commissioner, the receiver is disdharged with the thanks of the court.